---



**SO ORDERED,**

*Katharine M. Samson*

**Judge Katharine M. Samson**
**United States Bankruptcy Judge**
**Date Signed: March 30, 2026**

**The Order of the Court is set forth below. The docket reflects the date entered.**

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF MISSISSIPPI

IN RE:  IKECHUKWU H. OKORIE                                    CASE NO. 19-50379-KMS

   DEBTOR                                                                          CHAPTER 7

TRUSTMARK NATIONAL BANK                                              PLAINTIFF

V.                                                                          ADV. PROC. NO. 19-06032-KMS

IKECHUKWU H. OKORIE                                                      DEFENDANT

### OPINION AND ORDER GRANTING TRUSTMARK BANK'S MOTION FOR SUMMARY JUDGMENT (ADV. DKT. NO. 48) AND DENYING OKORIE'S MOTION FOR SUMMARY JUDGMENT (ADV. DKT. NO. 45) [1]

**THIS MATTER** is before the Court on Trustmark Bank's Motion for Summary Judgment (Adv. Dkt. No. 48); the Memorandum of Authorities in Support of the Motion (Adv. Dkt. No. 49); the Response in Opposition by Debtor Ikechukwu H. Okorie (Adv. Dkt. Nos. 55, 61); Okorie's Declaration and Counter-Statement of Material Facts and Objections to Plaintiff's Summary Judgment Exhibits (Adv. Dkt. Nos. 54, 62); and Trustmark's Reply in Support of Motion for Summary Judgment (Adv. Dkt. No. 67). Also before the Court is Okorie's Motion for Summary

---

[1] Electronic case filing document numbers in this adversary proceeding, No. 19-06032-KMS, are designated as "Adv. Dkt. No. ___." *See The Bluebook: A Uniform System of Citation* R. B17.1.4, at 27 (Columbia L. Rev. Ass'n et al. eds., 22d ed. 2025). Document numbers in the underlying bankruptcy case, No. 19-50379-KMS, are designated as "Dkt. No. ___."

Judgment (Adv. Dkt. Nos. 45-1, 52); the Memorandum of Law in Support (Adv. Dkt. No. 45-2); and the Statement of Undisputed Material Facts (Adv. Dkt. No. 45-3). Having reviewed the motions, pleadings, and supporting documentation, the Court determines that Trustmark is entitled to a judgment of nondischargeability as a matter of law. Therefore, Trustmark's Motion is granted and Okorie's Motion is denied.

### I. Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of this proceeding under 28 U.S.C. § 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), (O).

### II. Procedural Background

1.      On February 27, 2019, Okorie filed a petition for relief under Chapter 11 of the Bankruptcy Code.[2] Dkt. No. 1. After two years, the case was converted to Chapter 7. Dkt. No. 339. Okorie received a Chapter 7 discharge on October 5, 2021. Dkt. No. 447.

2.      On April 9, 2019, Trustmark filed a proof of claim in the amount of $561,815.82 for loans to Okorie and/or Inland Family Practice Center, LLC ("Inland"), Okorie's medical clinic.[3] *See* Cl. No. 10-1. The proof of claim attachments include a commercial guaranty in favor of Trustmark executed by Okorie as the 100% owner of Inland. Cl. No. 10-1 at 19-21; Adv. Dkt. No. 1 at 3.

3.      On August 9, 2019, Trustmark filed an adversary complaint seeking determination of nondischargeability under 11 U.S.C. § 523(a)(6) for willful and malicious injury caused by Okorie's sale of medical equipment securing Trustmark's loan to Inland. *See* Adv. Dkt. No.

---

[2] Unless otherwise noted, references to code sections and chapters are to the Bankruptcy Code found at Title 11 of the United States Code.

[3] Okorie filed an objection to Trustmark's claim on July 11, 2023. Dkt. No. 638. The objection was overruled in the Court's Opinion and Order on Debtor's Objections to Claims on November 6, 2023. Dkt. No. 932. The Court noted that "Dr. Okorie has admitted the total amount of Trustmark's debt and has no basis for objection." Dkt. No. 932 at 20 n.16.

1 at 2-6. Trustmark alleged that Okorie and Inland, "without the knowledge or consent of Trustmark, sold the practice located at . . . Ellisville . . . , including the x-ray machine and related equipment, to a third party" and did not pay Trustmark.[4] Adv. Dkt. No. 1 at 4. Trustmark asserted a nondischargeable debt of $211,928.08, plus interest and attorney's fees of $15,956.55.[5] Adv. Dkt. No. 1 at 6.

4.      After Okorie filed his Answer denying Trustmark's entitlement to relief, the Court entered scheduling orders establishing and extending discovery deadlines. Adv. Dkt. Nos. 6, 7, 16, 26.

5.      Discovery ended on October 7, 2021. Adv. Dkt. No. 26.

6.      In a joint status report filed on November 2, 2021, the parties requested that the adversary proceeding be "held in abeyance pending a determination of the amount of distribution that may become available" to Trustmark through the Chapter 7 process. Adv. Dkt. No. 29 at 2.

7.      On August 19, 2025, Trustmark filed a request for status conference, noting that since the time of the joint status report, Okorie has been engaged in protracted litigation with the Chapter 7 trustee and other creditors. As a result, no disbursements have been made by the trustee to creditors. Adv. No. 30.

8.      On the same day, Okorie filed a Notice of Termination of Counsel and Entry of Appearance Pro Se. Adv. Dkt. No. 32.

---

[4] Trustmark contends that it learned of the sale of its collateral at the § 341 Meeting of Creditors. Adv. Dkt. No. 1 at 5, 6.

[5] On March 17, 2016, Inland borrowed $303,921.00 to finance the purchase of equipment, including an x-ray machine and related equipment, at the Inland clinic in Ellisville, Mississippi. Adv. Dkt. No. 1 at 2. Inland borrowed an additional $38,176.00 to complete the purchase. Adv. Dkt. No. 1 at 3.

9.      At a status conference in September of 2025, the parties were given a deadline for filing dispositive motions. Adv. Dkt. Nos. 41, 43. Both parties filed motions for summary judgment. Adv. Dkt. Nos. 45, 48.

10.     Trustmark contends that there are no genuine issues of material fact and that it is entitled to a nondischargeable judgment as a matter of law under § 523 in the amount of $120,228.73 plus fees and costs.[6] Adv. Dkt. No. 48 at 1-2. Trustmark's supporting documentation includes the complaint and answer, promissory notes and security agreements, settlement statement, bill of sale, guaranty agreement, Okorie's deposition transcript,[7] UCC financing statements, and Trustmark's complaint for replevin in state court. *See* Adv. Dkt. No. 48.

11.     Okorie contends that Trustmark cannot establish nondischargeability under § 523(a)(6) and that the transfer of collateral constitutes, at most, a contractual dispute which must be resolved in his favor. Adv. Dkt. No. 45-1 at 1-2.

### III. Summary Judgment Standard

"[A]t the summary judgment stage the [court's] function is not … to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249 (1986). Summary judgment is appropriate "if

---

[6] Trustmark notes in its brief that "the value of the x-ray machine at the time of the replevin was $91,000.00, which is a large percentage of the net proceeds of $120,228.73 that should have been paid to Trustmark." Dkt. No. 49 at 5 n.2.

[7] Although it is not clear, Okorie seems to argue that he was not provided a copy of the deposition transcript in discovery. Adv. Dkt. Nos. 61-1 at 2-7, 62-2 at 2-4. He objects to incomplete excerpts and lack of a full transcript, but the entire transcript was attached to Trustmark's Motion. *See* Adv. Dkt. No. 48-3 at 1-39). Okorie was represented by counsel while discovery was ongoing. It is not Trustmark's obligation to provide Okorie and his counsel a copy of his own deposition. *See Gomez v. Massey*, No. 3:18-CV-00348, 2020 WL 2104700, at *2 (S.D. Tex. Apr. 23, 2020) (noting that plaintiff was under no obligation to provide defendant with copy of his deposition); *Schroer v. U.S.*, 250 F.R.D. 531, 537 (D. Colo. 2008) ("The general rule, established expressly by the Federal Rules of Civil Procedure, is that a party must obtain copies of deposition transcripts directly from the court reporter upon the payment of a reasonable charge, and not from opposing counsel or the court."); Fed. R. Civ. P. 30(f)(3) (upon payment to officer taking deposition, copy of transcript must be furnished).

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (made applicable by Fed. R. Bankr. P. 7056). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable [fact-finder] to return a verdict for the non-moving party." *Ginsberg 1985 Real Est. P'ship v. Cadle Co.*, 39 F.3d 528, 531 (5th Cir. 1994) (citations omitted). A party asserting that a fact either is genuinely disputed or cannot be genuinely disputed must support the assertion by citations "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

The moving party bears the initial responsibility of informing the court of the basis for its motion and the parts of the record that indicate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Once the moving party presents the . . . court with a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that summary judgment is inappropriate." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby Inc.*, 477 U.S. at 255. "If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

The non-movant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). When the non-movant "fails to properly address [the movant's] assertion of fact as

required by Rule 56(c), the court may . . . consider the fact undisputed . . . [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed— show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

On cross-motions for summary judgment, each movant must establish the absence of a genuine issue of material fact and the movant's entitlement to judgment as a matter of law. *Shaw Constructors v. ICF Kaiser Eng'rs Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004). "If there is no genuine issue and one of the parties is entitled to prevail as a matter of law, the court may render summary judgment." *Id.* at 539.

### IV. Undisputed Material Facts[8]

The following facts are undisputed, either having been admitted as true in Okorie's answer to Trustmark's complaint, or acknowledged in deposition testimony or declaration. And because the motions by both Trustmark and Okorie are based on the same essential facts, these undisputed facts serve as a basis for both motions.

1.    From January 2016 to May 2016, Trustmark made a series of loans to Inland. Compl., Adv. Dkt. No. 1 at 2; Answer, Adv. Dkt. No. 6 at 2.

2.    On March 17, 2016, Inland executed a promissory note in the amount of $303,921.00 in favor of Trustmark with a maturity date of March 18, 2021. Adv. Dkt. Nos. 1 at 2; 6 at 2.

---

[8] The undisputed facts are taken largely from Trustmark's Complaint and Okorie's Answer. *See Martinez v. Bally's Louisiana Inc.*, 244 F.3d 474, 476 (5th Cir. 2001) ("A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention."); *Davis v. A.G. Edwards and Sons Inc.*, 823 F.2d 105, 108 (5th Cir. 1987). ("Facts that are admitted in the pleadings are no longer at issue.") (citation modified); *Devs. Sur. and Indem. Co. v. Driftwood Dev. LP*, No. SA-07-CV-503-XR, 2008 WL 4838606, at *2 n.6 (W.D. Tex. Nov. 5, 2008) ("Defendants' admissions in their Answer are legally determinative admissions of fact and serve as proper summary judgment evidence to demonstrate that there is no genuine issue of fact.").

3.    The purpose of the note was to finance Inland's purchase of equipment including an x-ray machine and related equipment for use at the clinic in Ellisville, Mississippi. Adv. Dkt. Nos. 1 at 2; 6 at 2; 49 at 2; 48-3 at 12-13.

4.    Inland executed a Commercial Security Agreement granting Trustmark a purchase money security interest in the x-ray machine and related equipment. Adv. Dkt. Nos. 1 at 2; 6 at 2; 49 at 2-3; 48-3 at 14.

5.    The Security Agreement provided that: "Except for inventory sold or accounts collected in the ordinary course of Grantor's business, . . . Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral." Adv. Dkt. Nos. 1 at 3; 6 at 2; 1-2 at 1-2.

6.    The Security Agreement further provided that: "[A]ll proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender." Adv. Dkt. Nos. 1 at 3; 6 at 2; 1-2 at 1-2.

7.    On May 19, 2016, Inland executed a second note to Trustmark in the amount of $38,176.00. Adv. Dkt. Nos. 1 at 3; 6 at 2.

8.    The purpose of the second note was to complete the purchase of the x-ray machine and related equipment. Adv. Dkt. Nos. 1 at 3; 6 at 2.

9.    Okorie is the 100% owner of the membership interest in Inland. Adv. Dkt. Nos. 1 at 3; 6 at 2.

10.    Okorie executed a Commercial Guaranty in favor of Trustmark. Adv. Dkt. Nos. 1 at 3; 6 at 2.

11.   The Guaranty agreement provides: "For good and valuable consideration, Guarantor absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of Borrower, or any one or more of them, to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents." Adv. Dkt. Nos. 1 at 3; 6 at 2; 48-4 at 1.

12.   Okorie and Inland, without knowledge or consent of Trustmark, sold the practice located at 87 Hal Crocker Road, Ellisville, Mississippi, including the x-ray machine and related equipment, to a third party, Circle J. Properties, LLC, and did not pay Trustmark. Adv. Dkt. Nos. 1 at 4; 6 at 2.

13.   A Personal Property Agreement (Bill of Sale) executed as part of the sale of the Ellisville practice expressly referenced the sale and transfer of personal property located in the medical clinic including the x-ray machine and related equipment.[9] Adv. Dkt. Nos. 1 at 4; 6 at 2; 48-3 at 23, 33.

14.   The Bill of Sale states that the seller has "good and marketable title to the personal property free and clear of any claims, security interests, liens or encumbrances of any kind whatsoever." *See* Adv. Dkt. Nos. 1 at 4; 6 at 2.[10]

15.   As the 100% owner and managing member of Inland, Okorie made all decisions for Inland including the decision to sell the Ellisville clinic. Adv. Dkt. Nos. 49 at 2; 48-3 at 8, 37; 62-

---

[9] The Personal Property Agreement (Bill of Sale) was between Royal Oaks Rental Properties LLC, as seller, and Circle J. Properties as buyer. Adv. Dkt. No. 1-6 at 1-3. "Okorie admitted that he and his wife own or owned Royal Oaks. Ex. 3, p. 24, lines 8-12. But Okorie also admitted that the closing statement was amended to indicate that Inland Family was the entity conveying the property. Ex. 3, p. 23, lines 24-25, p. 24, lines 1-5." Adv. Dkt. No. 49 at 6 n.3.

[10] Although Okorie does not admit Trustmark's characterization of the quote, he does state that the document speaks for itself. Adv. Dkt. No. 6 at 2.

1 at 1 ("In April 2018, I authorized the sale of Inland Family's Ellisville clinic and its assets, including medical equipment, to Circle J. Properties, LLC.").

16.     Trustmark filed UCC statements and had a lien on the equipment. Adv. Dkt. Nos. 48-3 at 23-24; 48-5 at 1-4.

17.     When he sold Trustmark's collateral, Okorie did not get a release from Trustmark or obtain Trustmark's consent. Adv. Dkt. Nos. 49 at 5-6; 48-3 at 20.

18.     Okorie or Inland received approximately $120,000 net proceeds from the sale of the clinic and did not remit the proceeds to Trustmark. Adv. Dkt. No. 49 at 6; Adv. Dkt. No. 48-3 at 20-21, 31-32.

## *V. Analysis*

### *A. Nondischargeability under Section 523(a)(6).*

The Bankruptcy Code excepts from discharge "any debt[11]—*for* willful and malicious injury by the debtor" to another person or their property. *See* 11 U.S.C. § 523(a)(6). To render a prepetition debt non-dischargeable under § 523(a)(6), "a plaintiff must establish three elements: (1) injury by the debtor; (2) to another (or property of another); and (3) such injury was willful and malicious." *Robertson v. Murray (In re Murray)*, No. 20-01587-KMS, Adv. No. 20-00032-KMS, 2022 WL 982736 at *6 (Bankr. S.D. Miss. Mar. 31, 2022) (citing *Estate of Necaise v. Necaise (In re Necaise)*, No. 11-52718-KMS, Adv. No. 12-05011-KMS, 2013 WL 4590890 at *4 (Bankr. S.D. Miss. Aug. 28, 2013)); *see also Whitney Nat'l Bank v. Phillips (In re Phillips)*, No. 08-02325-NPO, Adv. No. 09-00033-NPO, 2010 WL 5093388, at *6 (Bankr. S.D. Miss. Dec. 8, 2010) (discussing standards for non-dischargeability under § 523(a)(6)). "The Fifth Circuit has articulated the standard for non-dischargeability under § 523(a)(6), concluding that 'an injury is

---

[11] "Debt" under the Bankruptcy Code means "liability on a claim." 11 U.S.C. § 101(12).

"willful and malicious" where there is an either an objective substantial certainty of harm or a subjective motive to cause harm.'" *Necaise*, 2013 WL 4590890 at *4 (quoting *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998)); *see also Shcolnik v. Rapid Settlements Ltd. (In re Shcolnik)*, 670 F.3d 624, 629 (5th Cir. 2012). The Fifth Circuit has further elaborated that "for an injury to be 'willful and malicious' it must satisfy our two-part test *and* not be sufficiently justified under the circumstances to render it not 'willful and malicious.'" *Mann Bracken LLP v. Powers (In re Powers)*, 421 B.R. 326, 332 (Bankr. W.D. Tex. 2009) (discussing history of § 523(a)(6) in 5th Circuit and citing *Berry v. Vollbracht (In re Vollbracht)*, 276 F. App'x 360, 361-62 (5th Cir. 2007)). "[D]ebtors generally deny that they had a subjective motive to cause harm," so when a debt is held nondischargeable, the usual basis is the objective test. *In re Vollbracht*, 276 F. App'x at 361-62.

The creditor has the burden of proof to "establish that the debt is non-dischargeable by a preponderance of the evidence." *McClung v. Castaneda (In re Castaneda)*, 638 B.R. 737, 746 (Bankr. S.D. Tex. 2022) (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). "'Preponderance' means . . . more likely than not." *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. Ltd., II (In re Briscoe Enters. Ltd., II)*, 994 F.2d 1160, 1164 (5th Cir. 1993).

In making its findings, the Court relies on the following facts. Okorie was the 100% owner and managing member of Inland. Inland operated a medical clinic in Ellisville, Mississippi. Trustmark made loans to Inland for the purchase of an x-ray machine and related equipment and perfected security interests in the machinery and equipment. Okorie executed the loan documents on behalf of Inland and personally guaranteed the debt. The loan documents and/or security agreements prohibited the sale, transfer, or disposal of Trustmark's collateral. Yet when Okorie sold the Ellisville medical clinic to a third party, he included Trustmark's collateral in the sale.

The sale was conducted without the knowledge or consent of Trustmark. And Okorie did not pay any of the sale proceeds to Trustmark.

These facts are undisputed. Whether movants are entitled to judgment is a matter of law.

### B. Willful and Malicious Injury.

The first two requirements for nondischargeability under § 523(a)(6)—(1) injury by the debtor (Okorie), and (2) to another or property of another (Trustmark)—are established by undisputed facts. The question presented is whether Okorie's sale of Trustmark's collateral without payment to Trustmark establishes a willful and malicious injury by Okorie, rendering the debt to Trustmark nondischargeable. If Okorie's actions were at least substantially certain to result in injury to Trustmark, or Okorie had a subjective motive to cause harm, then the debt is non-dischargeable under § 523(a)(6). *See Miller*, 156 F.3d at 604; *Murray*, 2022 WL 982736 at *6. Under this standard, Okorie's sale of Trustmark's collateral without consent or remittance of payment was substantially certain to result in injury to Trustmark.

The Fifth Circuit addressed the wrongful sale or conversion of encumbered property in the context of § 523(a)(6) in *Triumphant Gold Ltd. v. Matloff (In re Matloff)*, No. 24-10439, 2025 WL 2848990 (5th Cir. Oct. 8, 2025):

> Our cases confirm that the "debt" for "willful and malicious injury" addressed in § 523(a)(6) "encompasses the wrongful sale or conversion of encumbered property by the debtor." *In re Modicue*, 926 F.2d at 453; *see also In re Green*, 968 F.3d at 524–25 (recognizing § 523(a)(6)'s application where "the debtor acts in a manner which one knows will place the lender at risk, such as converting property in which the lender holds a security interest" (citation omitted)). And, in that context, "the injury to [the creditor] is the loss of [converted] collateral securing [the debtor's] indebtedness." *In re Modicue*, 926 F.2d at 453; *In re Zolnier*, 2021 WL 5778461, at *5.
>
> "Therefore, under § 523(a)(6), [the creditor] is entitled to the value of the collateral denied it by [the debtor's] wrongful actions." *In re Modicue*, 926 F.2d at 453; *see also In re Zolnier*, 2021 WL 5778461, at *5 (the value of converted collateral is

excepted from discharge); *In re Kite*, 2018 WL 6819509, at *5-6 (concluding creditor's § 523(a)(6) damages comprise the decrease in value of collateral).

*In re Matloff*, 2025 WL 2848990, at *19; *see also Collins v. Zolnier (In re Zolnier)*, No. 21-20260, 2021 WL 5778461, at *4 (5th Cir. Dec. 6, 2021) (wrongful sale or conversion of encumbered property meets requirements of § 523(a)(6)); *Trustmark Nat'l Bank v. Tegeler (In re Tegeler)*, 586 B.R. 598, 692 (Bankr. S.D. Tex. 2018) ("[C]onversion of another's property [or interest in property] without the owner's knowledge or consent, done intentionally and without justification and excuse, is a willful and malicious injury within the meaning of the exception").

Because Okorie's sale of Trustmark's collateral without remission of proceeds or notice to Trustmark satisfies the requirement for objective substantial certainty of harm to Trustmark essential for exception to discharge under §523(a)(6), it is not necessary to determine the alternative element of subjective motive to cause harm.

### C. Measure of Damages.

The appropriate measure of damages for the § 523(a)(6) injury is the value of the collateral at the time it was sold. As the Fifth Circuit explained:

> Section 523(a)(6) is based on tort principles rather than contract . . . Thus, the appropriate measure for non-dischargeability under § 523(a)(6) is an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis. In this case, the injury . . . is the loss of the collateral securing the . . . indebtedness . . . Therefore, under § 523(a)(6), Friendly is entitled to the value of the collateral denied it by the Modicue's wrongful actions.
> . . .
> The bankruptcy court and the district court correctly concluded that the appropriate measure of the non-dischargeable injury is the fair value at the time the property was sold.

*Friendly Fin. Serv. Mid-City Inc. v. Modicue (In re Modicue)*, 926 F.2d 452 (5th Cir. 1991); *see also Barvie v. Broadus*, No. 1:14-CV-453-KS-RHW, 2015 WL 5604244, at *2 (S.D. Miss. Sept. 23, 2015) ("Because § 523(a)(6) is based on tort principles instead of contract, the correct measure

of non-dischargeability under this section is the amount caused by the injury rather than the sum owed to the debtor under contract.").

The appropriate measure of damages to which Trustmark is entitled is the value of its collateral at the time Okorie wrongfully sold it. The Court will set an evidentiary hearing to determine the value.

In addition, each of the notes and security agreements authorize Trustmark to recover attorneys' fees and expenses incurred in connection with default and/or enforcement of the agreements, including bankruptcy proceedings. Adv. Dkt. No. 48-1 at 8, 13, 15, 20. Consequently, Trustmark is entitled to recover its attorneys' fees for this adversary proceeding. Since the underlying debt is non-dischargeable under § 523(a)(6), the related attorneys' fees are also nondischargeable. *See Helvetia Asset Recovery, Inc. v. Kahn (In re Kahn)*, 533 B.R. 576, 587-88 (Bankr. W.D. Tex. 2015).

### D. Okorie's is not Entitled to Judgment as a Matter of Law.

Okorie asserts that Trustmark cannot establish willful and malicious injury under § 523(a)(6), contending that Trustmark offers no evidence of intent to harm. He urges that the sale of the equipment was simply a business sale and at most a contractual dispute, not a willful and malicious tortious injury. *See* Adv. Dkt. Nos. 45-1, 45-2. However, as discussed above, § 523(a)(6) is based on tort principles rather that contract.[12]

Okorie next asserts that § 523(a)(6) requires an actual, uncompensated injury, claiming that Trustmark foreclosed on clinic properties (including 908 West Pine), liquidated equipment, retained UCC liens on Inland assets, and benefitted from insurance recoveries, claiming double

---

[12] *See also Res. Ent. Grp. LLC v. Wilhite (In re Wilhite)*, No. 16-10632-JDW, Adv. No. 16-01053-JDW, 2017 WL 835764, *8 (Bankr. N.D. Miss. Mar 1, 2017) (noting that some courts require tortious act to accompany breach of contract to satisfy willful and malicious standard but Fifth Circuit does not require separate tort).

recovery and unjust enrichment. Adv. Dkt. Nos. 45-1 at 5, 45-2. Okorie offers no proof to substantiate his argument that Trustmark has already recovered its claim from such sources. Moreover, he repeatedly incorrectly asserts that Trustmark foreclosed on property that was actually foreclosed by PriortyOne Bank, as noted in this Court's Opinion and Order on Debtor's Objections to Claims entered on November 6, 2023, and affirmed on appeal. *See* Dkt. No. 932 at 11, 13, 14, 21. The opinion also overrules Okorie's objections to the proof of claim filed by Trustmark and addresses the sale of the x-ray machine and related equipment on which Trustmark had a lien. *Id*. at 3, 7, 8, 10, 11, 13, 20-23, 25.

Okorie argues that Trustmark abandoned its claim for four years, that the delay prejudices him, and the matter should be dismissed for failure to prosecute. Adv. Dkt. Nos. 45-1, 45-2. However, as set out in the procedural background, the parties filed a joint status report that held the adversary in abeyance pending a determination of the amount of distribution that may become available to Trustmark through the Chapter 7 process. After four years, there has been no distribution due to protracted litigation instigated by Okorie. *See* Order Granting Mot. for Contempt, Dkt. No. 1579, at 2-3 (noting court's declaration that Okorie is vexatious litigant and attaching multi-page litigation chart). As noted by the Court, litigation against the Trustee is basically depleting any recovery that would have been available to creditors. Order Granting Mot. for Sanctions, Dkt. No. 1198, at 13 ("Dr. Okorie's conduct amounts to bad faith . . . His actions have resulted in an increase of administrative expenses that will drain the recovery to creditors.") So, the failure to prosecute argument is based on an inaccurate assessment of the proceedings in this case.

To the extent that Okorie has asserted other positions or arguments,[13] the Court does not find it necessary to address each specifically, noting that his assertions of fact are not material to the issues before the Court, and that his asserted legal conclusions are not supported by applicable law.

Okorie objects to the replevin complaint as inadmissible hearsay. Any issues regarding the replevin complaint are not material because the Court does not rely on the complaint for its ruling.

### VI. Conclusion and Order

Having considered the motion and the undisputed facts, the Court determines that Trustmark is entitled to judgment as a matter of law and its motion for summary judgment should be granted. Okorie is not entitled to judgment as a matter of law and his motion for summary judgment should be denied. Final judgment will be entered after a hearing on damages.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Trustmark's Motion for Summary Judgment is granted.

**IT IS FURTHER ORDERED AND ADJUDGED** that Okorie's Motion for Summary Judgment is denied.

*##END OF ORDER##*

---

[13] For example, in his Declaration, Okorie asserts that the clinic sale was the result of financial duress and that he did not believe the sale would cause Trustmark uncompensated loss. Adv. Dkt. No. 62-1. These allegations are immaterial to the legal issues. In fact, a transfer during financial difficulties has been considered in some contexts to be a badge of fraud. *See IRS v. Tallis (In re Tallis)*, 634 B.R. 339, 356 (Bankr. N.D. Tex. 2021) (in considering willful evasion of tax under § 523(a)(1)(C), circumstantial factors of fraud may include "transfers made in the face of serious financial difficulties."); *Huber v IRS (In re Huber)*, 213 B.R. 182, 185 (Bankr. M.D. Fla. 1997) (similar).